## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

APR 0 6 2004

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA
BY_____
DEPUTY

| | | |
|---|---|---|
| 1. FORT SILL APACHE TRIBE OF OKLAHOMA, | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Case No. CIV-04-0337-R |
| 1. UNITED STATES OF AMERICA;<br>2. UNITED STATES DEPARTMENT OF THE INTERIOR;<br>3. GALE NORTON, SECRETARY OF INTERIOR;<br>4. DAVE ANDERSON, ASSISTANT SECRETARY OF INTERIOR FOR INDIAN AFFAIRS;<br>5. PHILIP HOGEN, CHAIRMAN, NATIONAL INDIAN GAMING COMMISSION, all in their official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

---

## BRIEF AMICUS CURIAE OF THE CHOCTAW NATION OF OKLAHOMA IN SUPPORT OF DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION STAYING AGENCY ACTION PENDING REVIEW

---

Dennis W. Arrow
Oklahoma City University School of Law
2501 N. Blackwelder Ave.
Oklahoma City, OK 73106
         (405) 521-5179
         (405) 521-5089 (fax)

ATTORNEY FOR AMICUS CURIAE CHOCTAW NATION

## TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTEREST OF AMICUS CURIAE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.      PLAINTIFF HAS VIRTUALLY NO CHANCE OF PREVAILING
ON THE MERITS OF THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    PLAINTIFF'S CONTENTION THAT INCORPORATIONS BY
REFERENCE MAY NOT BE EMPLOYED IN THE PERFORMANCE
OF SECRETARIAL DUTIES TO ASCERTAIN WHETHER LANDS IN
OKLAHOMA ARE "FORMER RESERVATION LANDS" IS
UNSUPPORTED BY A SCINTILLA OF LEGAL AUTHORITY, AND
IS INCONSISTENT WITH THE CONGRESSIONAL PURPOSES
UNDERLYING IGRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           1.    *Plaintiff's Core Premise Does In Fact Reduce to the
Premise Articulated Immediately Above.* . . . . . . . . . . . . 9

           2.    *The Core Premise of Plaintiff's 25 U.S.C. §
2719(a)(2)(A)(i) Argument, Described Immediately
Above, Is Legally Unsupportable.* . . . . . . . . . . . . . . . 11

      B.    PLAINTIFF'S ASSERTIONS THAT FURTHER ADMINISTRATIVE
REVIEW IS AVAILABLE ARE ERRONEOUS. . . . . . . . . . . . . . . . 14

      C.    PLAINTIFF'S ATTEMPT TO ENGRAFT THE REQUIREMENTS OF
25 U.S.C. § 2719(b)(1)(A) ONTO 25 U.S.C. § 2719(a)(2)(A)(i)
IS LEGALLY UNSUPPORTABLE. . . . . . . . . . . . . . . . . . . . . . . . 16

II.     THE BALANCE OF EQUITIES RUNS OVERWHELMINGLY
        AGAINST THE PLAINTIFF IN THE INSTANT CASE. . . . . . . . . . .  16

        A.      PLAINTIFF MAY NOT MARGINALIZE THE HARMS TO THE
                STATE OF OKLAHOMA, THE CHICKASAW NATION, THE
                CHOCTAW NATION, THE MORE THAN TWENTY GAMING
                TRIBES IN THE STATE, AND THE CITIZENS OF ALL THE ABOVE,
                BY THE SIMPLE EXPEDIENT OF NOTING THAT THEY ARE NOT
                PARTIES TO THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

        B.      ALONG WITH THE HARMS TO THE UNITED STATES'
                INTERESTS IN GOVERNMENTAL REGULARITY,
                ADMINISTRATIVE EFFICIENCY, AND TRIBAL SELF-
                SUFFICIENCY, THE FINANCIAL (AND RELATED) INTERESTS OF
                THE PERSONS AND ENTITIES DESCRIBED IN PROPOSITION
                HEADING II-A ABOVE OUTBALANCE PLAINTIFF'S EQUITIES
                BY A WIDE MARGIN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

# TABLE OF AUTHORITIES

*Page*

CASES

*Homans v. City of Albuquerque*, 264 F.3d 1240 (10th Cir. 2001) . . . . . . . . . .  17

STATUTES

Indian Gaming Regulatory Act [IGRA], 102 Stat. 2467 (1988) . . . . . . . . . . . . .  1
25 U.S.C. § 2701(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
25 U.S.C. § 2701(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
25 U.S.C. § 2702(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
25 U.S.C. § 2703(4)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3, 4, 5, 6, 11
25 U.S.C. § 2710(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 4, 5
25 U.S.C. § 2710(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
25 U.S.C. § 2710(d)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 2, 6, 7, 13, 14, 15
25 U.S.C. § 2719(a) . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 7, 8, 11, 12, 13, 16, 18
25 U.S.C. § 2719(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 16

REGULATIONS

25 C.F.R. § 2.1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15
25 C.F.R. § 2.4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
25 C.F.R. § 2.6(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
25 C.F.R. § 2.7(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
25 C.F.R. § 2.20  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## STATEMENT OF THE CASE

After having secured appropriate approval from both the State of Oklahoma and the Chickasaw Nation in late 2003 and early 2004, on February 9, 2004 the State and the Nation submitted a Class III gaming compact for off-track parimutuel wagering at four sites to the Secretary of Interior ["Secretary"] (through the Bureau of Indian Affairs) for approval pursuant to 25 U.S.C. § 2710(d).  Class III gaming compacts have been agreed to between Oklahoma and the Choctaw Nation, and between Oklahoma and about seven or eight other Oklahoma tribes.  Those compacts were approved by the Secretary pursuant to 25 U.S.C. § 2710(d) and are now in force.  The Chickasaw Nation also operates Class III gaming enterprises at sites not subject to the instant litigation pursuant to compacts previously approved by the Secretary that are now in force.

Pursuant to 25 U.S.C. § 2710(d)(8)(C), the Compact submitted on February 9 would have been deemed approved "to the extent . . . consistent with" the other provisions of the Indian Gaming Regulatory Act ["IGRA"], 102 Stat. 2467 (1988), if no action were taken by the Secretary (through the Assistant Secretary for Indian Affairs) by midnight on Wednesday night, March 24, 2004.  Independent of 25 U.S.C. § 2710(d)(8)(C), IGRA authorizes the Secretary to approve tribal/state gaming compacts, *id.* § 2710(d)(8)(A), and to disapprove such compacts under narrowly limited circumstances, *id.* § 2710(d)(8)(B).

On March 22, 2004, the day before the date on which plaintiff initially thought (erroneously) that the 45-day "deemed approval" provision of 25 U.S.C. § 2710(d)(8)(C)

1

would have run, *see* Plaintiff's Emergency Motion to Alter or Amend Judgment Pursuant to FRCP 59(e) ["Plaintiff's Emergency Motion"] at 2 (so representing to this Court), Plaintiff filed a Complaint (seeking assorted relief) and an Application for TRO and Preliminary Injunction Staying Agency Action Pending Review ["Application for TRO"] with this Court.  This Court concluded, *inter alia*, that the State of Oklahoma and the Chickasaw Nation were indispensable parties who could not be joined because of sovereign immunity, and dismissed the case on March 23, 2004.  Order of March 23, 2004 at 3-4. The following day, acting through Defendant Anderson, Assistant Secretary for Indian Affairs, the Secretary of Interior approved the challenged Compact pursuant to 25 U.S.C. § 2710(d)(8)(A) and (B).

On March 29, 2004, Plaintiff filed its Emergency Motion in the now-dismissed case, based on "newly-available evidence" relating to the Compact's substantive approval by the Secretary, *see* Plaintiff's Emergency Motion at 2-5; urging that neither the State nor the Chickasaw Nation was now an indispensable party since their interests were now congruent with those of the United States, *id.* at 5-12; and shifting (but as the Choctaw Nation will demonstrate, immaterially) the thrust of its theory that a "site-specific" (and by that Plaintiff apparently means to preclude the incorporation of previous Solicitor's Office opinions and other legal documents by reference) finding is required for every land parcel subject to the "former reservation in Oklahoma" issue raised by 25 U.S.C. § 2719(a)(2)(A)(i), and every "Indian lands" [Class II *and* Class III gaming] issue raised by 25 U.S.C. §§ 2703(4) and

2

2710(b).  *See infra* at 8-10.  On March 30, 2004, this Court issued a TRO precluding publication in the *Federal Register* of the Secretarial approval of the Chickasaw Compact for 10 days, and ordered the United States to file any supplemental brief by April 2, 2004 (later extended to April 6, 2004).

## INTEREST OF AMICUS CURIAE

Independent of compact, the Choctaw Nation (along with over twenty other Oklahoma tribes) conducts Class II gaming operations pursuant to 25 U.S.C. § 2710(b) and (c) on "Indian lands" defined by 25 U.S.C. § 2703(4).  There are well in excess of sixty such gaming centers operated by the Choctaw Nation and other Oklahoma tribes, employing thousands and perhaps tens of thousands of tribal members and non-member Oklahoma citizens throughout the State.  The above-described tribes devote the revenue from those enterprises to activities directly benefitting the health, safety, and welfare of tribal members (and, at least in the case of the Choctaw Hospital and Clinic at Talihina, non-member citizens of the State), including educational, physical and mental health, transportation, and other social services, along with "multiplier effect" and secondary economic-development activities.  Plaintiff has taken pains to explain to this Court at numerous junctures in its filings that its theory of this case (and the administrative burdens that it believes this Court should impose on the Secretary) is sufficiently all-encompassing to include requiring a pre-existing "site-specific" finding (presumably also devoid of

3

incorporations-by-reference and related documentary reliance) by the Secretary that a parcel is "Indian lands" before even *Class II* gaming is allowed. *See, e.g.,* Complaint at 11 [first prayer for relief]; Plaintiff's Application for TRO at 2 [first ¶]; *id.* at 3 [lines 2-3]; Plaintiff's Brief in Support of Application for TRO and Preliminary Injunction ["Brief in Support of Motion for TRO"] at 14 [line 6].

Lest the ultimate legal consequences of its theory be missed, Plaintiff repeatedly notes that pursuant to its 25 U.S.C. § 2703(4)/25 U.S.C. § 2710(b) theory, some (most? all?) Class II gaming in Oklahoma (perhaps including its own?) is illegal. *See, e.g.,* Plaintiff's Emergency Motion at 3 ("Under the IGRA an 'Indian lands' determination concerning the site near Duncan . . . should have been made *prior* to the land being used (unlawfully) for class II gaming (since the late 1990's) . . . . " (emphasis in original)); *id.* at 13 (same); Complaint ¶ 21 ("Generally, DOI and NIGC do not make Indian lands . . . determinations on a particular gaming site unless that determination is tied to a specific request . . . for a Management Contract, which is not required when a Tribe elects to operate its own gaming facilities . . . or when a Tribe requests that a specific parcel . . . be taken into trust for gaming purposes."); *cf. infra* at 8-13 (further discussing Plaintiff's foundational if occasionally less-than-explicit objections to incorporations-by-reference). Thus, Plaintiff's theory expressly challenges the legality of at least some of the Choctaw Nation's *Class II* gaming activities, and likely the Class II gaming activities of a number of other Oklahoma tribes as well.

4

The Choctaw Nation not only uses revenues from its Class II gaming enterprises for health, safety, and welfare purposes today, but has relied on future revenues from those sources to contract for the construction of over $50,000,000 of such projects (including conference centers, hotels, arenas, community centers, fitness centers, and diabetes clinics) in the future.  In some of those cases, the Nation has waived its sovereign immunity in whole or in part (reasonably, in its judgment, based on longstanding and unwavering recognition by the United States, *inter alios*, of the legality of its Class II gaming enterprises).  Impairment of the legal status of those enterprises (or disruption of their revenue flow) based on any potential endorsement by this Court of Plaintiff's 25 U.S.C. § 2703(4)/ 25 U.S.C. § 2710(b) (Class II as well as Class III) "Indian lands" theory herein could therefore have devastating consequences to the financial well-being of the Choctaw Nation.  It is extremely probable that many among the more than twenty other Class II gaming tribes in Oklahoma will find themselves similarly situated.

The Choctaw Nation has also previously compacted with the State of Oklahoma for Class III gaming, and some of the sites at which such gaming now occurs are sites acquired in trust for other purposes after October 17, 1988, and thus potentially subject to Plaintiff's interpretation of the detail with which federal courts may supervise the manner in which the Secretary (through the Assistant Secretary for Indian Affairs) performs her duties under 25 U.S.C. § 2719(a)(2)(A)(i).  The approach that this Court takes to that question could well impact not only the Choctaw Nation's pre-existing compacts but also its ability to

compact with the State of Oklahoma in a similar manner in the future. Should Plaintiff's interpretation of the Secretarial duty (which in Plaintiff's view apparently precludes documentary incorporations-by-reference and/or similar Secretarial reliances, and might have this Court impose a Secretarial duty to have a new if logically unnecessary "title search" *ab initio* for *each parcel*), then, *by virtue of Plaintiff's own reasoning, see, e.g.*, Plaintiff's Brief in Support of Application for TRO and Preliminary Injunction at 12 ("[T]his matter clearly involves serious, substantial and difficult questions relating to . . . compl[iance] with . . . 25 U.S.C. §§ 2703(4) & 2719 . . . ."); *id.* at 13 (characterizing Oklahoma Indian land ownership issues as having a "tortuously complicated history" having "no clearly apparent answer" to the "former reservation" question), Plaintiff's proffered approach might effectively have this Court impose an *unperformable* duty on the Secretary. At a minimum, Plaintiff's view of the Secretarial administrative burden would likely render that burden incapable of performance within the "45-day window" established by 25 U.S.C. § 2710(d)(8)(C), a result that would frustrate the demonstrable congressional purpose of expeditious federal action on proposed compacts (and/or render tribal/state compacting more gratuitously burdensome to the potential detriment of both).

In short, for both Class II and Class III gaming purposes, the Choctaw Nation is vitally interested in the outcome of this litigation and any weight that this Court might place on the arguments and theories proffered by Plaintiff in this case.

6

## SUMMARY OF ARGUMENT

At the initial stage of this litigation, Plaintiff pursued the theory that despite the "automatic approval" remedy provided in 25 U.S.C. § 2710(d)(8)(C) for Secretarial inaction for more than 45 days under 25 U.S.C. § 2710(d)(8)(A) or (B) (authorizing Secretarial approval or disapproval, respectively, of Class III gaming compacts), this Court is invested with the authority to order the Secretary (acting through the Assistant Secretary for Indian Affairs) to make what it calls "site specific" "former reservation" findings under 25 U.S.C. § 2719(a)(2)(A)(i).  *See, e.g.*, Complaint at 11.  On March 24, 2004 the Secretary (through the Assistant Secretary for Indian Affairs) did precisely that, *see* Plaintiff's Emergency Motion at Exh. 1, 2, though the Area Director's letter on which the Assistant Secretary's decision was based did so in part by incorporating and referencing an earlier dispositive document from the Office of the Solicitor with respect to property similarly situated to the property that is the subject of the challenged Compact.

Because the Secretary has now acted, at this stage of the litigation Plaintiff's theory necessarily reduces not to the question whether this Court is invested with the authority to direct the Secretary *to* perform statutorily assigned tasks (contingent though they may be, *see* Gov't Response to Plaintiff's Application for TRO at 6-8; 25 U.S.C. § 2710(d)(8)(C)), but whether this Court is invested with the authority to direct the Secretary as to *how* to perform statutorily assigned tasks that the Secretary has *already performed*.  The Choctaw

Nation will demonstrate that this issue lies at the heart of Plaintiff's theory of the case, and that the answer to the question is a resounding "no."

The Choctaw Nation will also render specific, clarify, and rebut each of Plaintiff's other explicit (and occasionally implicit, or homogenized) premises and arguments. In so doing, it will demonstrate that Plaintiff's "further administrative review" contention, *see, e.g.*, Plaintiff's Emergency Motion at 13 [lines 20-21], is unsupported by law; that Plaintiff's attempts to engraft the requirements of 25 U.S.C. § 2719*(b)(1)(A)* onto 25 U.S.C. § 2719*(a)(2)(A)(i)*, *see, e.g.*, Complaint ¶ 12; Brief in Support of Application for TRO at 7-8 [¶ 14], are legally unsupportable, since 25 U.S.C. § 2719(a)(2)(A)(i)'s exception for "former reservation lands in Oklahoma" operates independently of the unrelated exceptions established by 25 U.S.C. § 2719(b); that in consequence of the above, Plaintiff has virtually no chance of success on the merits whatsoever; and that the balance of equities runs overwhelmingly (and dispositively) against Plaintiff in the instant case.[1]

---

[1] Without any attempt to draw any legal conclusion from the observation, Plaintiff asserts that if the former treaty lands of the Five Civilized Tribes are recognized for what they are (*i.e.* "former reservations"), "approximately . . . 50% of . . . Oklahoma *may* be put into trust *by the federal government* and used for gaming." Plaintiff's Emergency Motion at 14 (emphasis added). Perhaps the observation was made for purely emotive rather than legal effect, since Plaintiff soon thereafter repeats the assertion again without suggesting any legal conclusion therefrom. For that reason, the Choctaw Nation will not address the quantitative Five Tribes land issue except to note that any such consequence would be the result of immutable history [the Five Tribes *did* have large reservations in Oklahoma], congressionally-determined policy [IGRA], and as Plaintiff itself notes in the language italicized in the first sentence of this footnote, future (if speculative) *intra vires* decisions by the Secretary, *see* 25 U.S.C. § 2719(a)(2)(A)(i) ("former reservations, *as defined by the Secretary*" (emphasis added)).

## ARGUMENT AND AUTHORITIES

I.    PLAINTIFF HAS VIRTUALLY NO CHANCE OF PREVAILING ON THE
      MERITS OF THIS CASE.

      A.    PLAINTIFF'S CONTENTION THAT INCORPORATIONS BY REFERENCE MAY NOT
            BE EMPLOYED IN THE PERFORMANCE OF SECRETARIAL DUTIES TO
            ASCERTAIN WHETHER LANDS IN OKLAHOMA ARE "FORMER RESERVATION
            LANDS" IS UNSUPPORTED BY A SCINTILLA OF LEGAL AUTHORITY, AND IS
            INCONSISTENT WITH THE CONGRESSIONAL PURPOSES UNDERLYING IGRA.

            1.    *Plaintiff's Core Premise Does In Fact Reduce to the Premise
                  Articulated Immediately Above.*

Now that the Secretary (acting through the Assistant Secretary for Indian Affairs)
has approved the Chickasaw Compact for the reasons described in the documents attached
as Exhibits 1 and 2 to Plaintiff's Emergency Motion, Plaintiff's challenge has necessarily
shifted not from whether this Court may direct the Secretary *to* perform, but to whether this
Court may direct the Secretary *how* to perform an act already performed.    Careful
examination of Plaintiff's Emergency Motion reveals that pages 3, 13, and 14 of that
document contain the core of Plaintiff's analysis relevant for present purposes.

At page 14 of that Motion, Plaintiff rehearses an earlier argument, *see, e.g.*, Brief in
Support of Application for TRO at 13, 16, that the Secretary has "continu[ally] refus[ed]
to define 'former reservation' in Oklahoma."  Whether or not (as Plaintiffs seem to suggest
at one point, *see id.* at 13) it would take a thousand-page law-review article to do so at an
appropriate level of specificity (and even assuming counterfactually that anything in IGRA,
its implementing regulations, or any other provision of the United States Code compels the

Secretarial generation of an all-encompassing general definition), far more than adequate for present purposes is the Secretarially-endorsed "Five Tribes" definition contained at page 6 of the Field Solicitor's September 21, 1993 memorandum. *See* Plaintiff's Emergency Motion Exh. 2 (seventh unnumbered page: defining the Five Tribes' "former reservations" as the "*former treaty lands* of the Five Civilized Tribes" (emphasis added)). Because Plaintiff's "page 14" analysis is both factually inaccurate (in relevant part) and legally unsustainable (in whole), the Choctaw Nation respectfully submits that it should not long detain this Court.

At page 3 of its Emergency Motion (emphasis in original), Plaintiff argues further:

> The opinion rendered March 23, 2004, by an Area Director, does not meet the requirement for an "<u>Office of the Solicitor's</u> opinion that the land is within the tribe's former reservation" (*See* Complaint, Exhibit 4, pp. 6-7) . . . .

At page 13 of its Emergency Motion (emphasis in original), Plaintiff adds:

> Even timely rendered, the opinion of an Area Director does not meet the requirement for a site-specific "<u>Office of the Solicitor's</u> opinion that the land is within the tribe's former reservation" (*See* Complaint, Exhibit 4, pp. 6-7).

*Exhibit 4 to its own Complaint is all that the Plaintiff either cites or otherwise adduces in support of the pivotal proposition in this case.*

Presumably Plaintiff has not simply failed to notice that the September 21, 1993 memorandum reproduced in Exhibit 2 to its own Emergency Motion *is* a memorandum from the Solicitor's Office, and that the Acting Regional Director's March 23, 2004 letter

that Plaintiff denigrates *incorporates that memorandum by reference*.  Presumably also,

Plaintiff has not simply failed to notice that the March 24, 2004 letter that it reproduces as

Exhibit 1 to its Emergency Motion was a letter not from an Area Director but rather from

the *Assistant Secretary for Indian Affairs*.  Thus, at the heart of Plaintiff's theory of this

case lies the following core (if unstated) proposition:

> *When 25 U.S.C. § 2719(a)(2)(A)(i) excepts former reservation lands in Oklahoma* AS DEFINED BY THE SECRETARY *from the "after-1988-acquired-lands" gaming prohibition, it is not good enough that in the process of making such a determination the Secretary relies upon and/or incorporates by reference extrinsic Solicitor's Office (or other legal) documents addressing similarly-situated lands.  Moreover, this Court has the authority to construct from whole cloth internal BIA procedures pursuant to which the Secretary, Assistant Secretary, and Solicitor's Office must operate in making 25 U.S.C. § 2703(4) and 25 U.S.C. § 2719(a)(2)(A)(i) determinations.*

That premise is unsupported by a scintilla of legal authority, and is inconsistent with the

congressional policies underlying IGRA.

> 2.    *The Core Premise of Plaintiff's 25 U.S.C. § 2719(a)(2)(A)(i) Argument, Described Immediately Above, Is Legally Unsupportable.*

Plaintiff has not pointed to (because it cannot) any IGRA provision that supports the

proposition described above.  Plaintiff has not pointed to (because it cannot) any IGRA-

implementing regulation that supports its core 25 U.S.C. § 2719(a)(2)(A)(i) theory.  The

same may be said of any other provision of any other federal law, and any case from any

federal court.

11

Plaintiff does point to Exhibit 4 (which this Court will discover is also reproduced at Exhibit 6) of its Complaint. That Exhibit is an internal "checklist" document from the Office of Gaming Management dated October 2001, entitled "Checklist for Gaming-Related Acquisitions and IGRA Section 20[2] Determinations." In material respect, that document is an internal OIGM document not codified in C.F.R. and not (to the best of the Choctaw Nation's research) published in the *Federal Register.*

Plaintiff expressly relies on pages 6 and 7 of that document; at the carryover of page 6 to page 7 may be found the following sentence apparently directed (*see* Checklist at 1[3]) to OIGM *applicants*: "Include an Office of the Solicitor's opinion that the land is within the tribe's former reservation . . . ." At the first non-indented paragraph of page 7 may be found the following:

> When the application indicates that the proposed acquisition of land in Oklahoma is located in the Indian tribe's "former reservation," the Regional Director must provide a legal opinion from the Office of the Solicitor that the land qualifies as "former reservation lands" and should be treated as such for the purposes of IGRA.

We may assume arguendo (and counterfactually) that an internal OIGM document describing internal OIGM procedures and neither subjected to rulemaking procedures nor

---

[2]  25 U.S.C. § 2719, the statutory provision relevant for present purposes, is the codification of IGRA Section 20.

[3]  Plaintiff's proffered "Checklist" is directed to an at least facially undefined "you," with the admonition that the checklist's "procedural steps . . . *should* be followed . . . in assuring a complete file . . . ." Complaint Exh. 4 at 1 [second ¶] (emphasis added). It is clear from the context that the applicant is "the tribe." *Id.*; *see also id.* at 1 [¶ "C"].

published in the *Federal Register* may bind the Assistant Secretary for Indian Affairs and limit the compact-approval authority congressionally granted to the Secretary in 25 U.S.C. § 2710(d)(8) and 25 U.S.C. § 2719(a)(2)(A)(i), because even so assuming, and unless incorporations-by-reference are forbidden by some meta-level legal principle unknown to the Choctaw Nation,[4] *the checklist's procedures were followed in the instant case.*

The 1992 Solicitor's Office memorandum concluded that the former treaty lands of the Five Civilized Tribes (which include the proposed gaming site in Stephens County) are "'former reservation lands' as intended by Congress in 25 U.S.C. § 2719(a)(2)(A)(i) and should be afforded that status for purposes of the IGRA." *See* Plaintiff's Emergency Motion Exh. 2 (unnumbered page 7 (page 6 of the 1992 memorandum)).  The acting Regional Director provided that memorandum (along with an express incorporation by reference) to the OIGM Director.  And the Assistant Secretary for Indian Affairs accepted the conclusion of all the above in approving the challenged Compact.

Were more internal agency procedures to be required by this Court, the congressional policies underlying IGRA would inevitably be frustrated.  Congressional

---

[4]  Indeed (and even assuming counterfactually its legally-enforceable status against the Secretary), the Checklist's own text strongly supports the proposition that no such principle exists:

> When the Regional Director believes that the acquisition satisfies one of the Section 20 exemptions *other than* [25 U.S.C. § 2719](b)(1)(A) [which obviously includes the 25 U.S.C. § 2719*(a)(2)(A)(i)* exemption]; the transmittal memorandum from the Regional Director must [1] *so indicate* and [2] must *include an analysis* establishing that such an exemption exists, and [3] INCLUDE SUPPORTING DOCUMENTATION, *i.e.*, an appropriate Solicitor's Office legal opinion, in the acquisition file.

Complaint Exh. 4 at [numbered] "Page 2" [column 1, ¶ "E"] (emphasis and all bracketed material added). Even the most cursory examination of the Acting Regional Director's March 23, 2004 letter to the Director of OIGM, *see* Plaintiff's Emergency Motion Exh. 2 at 1, reveals that it does precisely that.

13

policy clearly ties tribal gaming to "tribal economic development, tribal self-sufficiency, and strong tribal government," *see* 25 U.S.C. §§ 2701(4), 2702(1); expressly supports the need for "*clear* standards" in regulating tribal gaming, *see id.* § 2701(3) (emphasis added); and equally expressly recognizes the need for speedy and efficient BIA action with respect to the approval *vel non.* of gaming compacts, *see id.* § 2710(d)(8)(C) (establishing the 45-day limit on Secretarial deliberation).  Yet in the face of those vitally-important federal policies, Plaintiff would enlist this Court in its crusade to slow the process to a snail's pace, perhaps with wholly unnecessary title examinations (perhaps to the beginning of time) conducted *ab initio* for each parcel absent the possibility of wholly reasonable incorporations-by-reference of relevant legal documents addressing similarly-situated parcels.  The draconian consequences (and glacial pace) of the resultant process can only be imagined, not the least in view of Plaintiff's own assertions that Oklahoma Indian lands have a "tortuously complicated history" perhaps in many cases having "no clearly apparent answer" to Indian-lands questions, *see* Plaintiffs Brief in Support of TRO at 13.  Plaintiff's proposal that this Court construct and enforce such an administrative regime cannot be what Congress intended, and Plaintiff has not a shred of relevant legal authority that it was.

B.      PLAINTIFF'S ASSERTIONS THAT FURTHER ADMINISTRATIVE REVIEW IS AVAILABLE ARE ERRONEOUS.

Plaintiff ostensibly seeks a preliminary injunction from this Court in part pending "administrative review pursuant to the procedures at 25 C.F.R. § 2.1 *et seq.*"  *See* Plaintiff's Emergency Motion at 13.  But Plaintiff fails to apprehend that the final agency action taken

14

in this case is the action taken by *Defendant Anderson* in his March 24, 2004 letter, *see* Plaintiff's Emergency Motion Exh. 1, and that Defendant Anderson's position as *Assistant Secretary for Indian Affairs* renders the approval of the challenged Compact *un*appealable "pursuant to the procedures at 25 C.F.R. § 2.1 *et seq.*" that Plaintiff invokes.

25 C.F.R. § 2.4 provides a list of officials who may decide appeals; while the Assistant Secretary for Indian Affairs may *decide* a number of appeals from subordinate officials, *id.* § 2.4(c); *see also id.* § 2.20 (providing procedures for appeals *to* the Assistant Secretary), no official to whom the Assistant Secretary's decisions may be appealed in relevant part is provided. Moreover, 25 C.F.R. § 2.6(c) provides:

> Decisions made by the Assistant Secretary — Indian Affairs *shall be final for the Department and effective immediately unless the Assistant Secretary — Indian Affairs provides otherwise in the decision.*

*Id.* (emphasis added). The Assistant Secretary has not provided otherwise in his March 24 decision. *Cf.* 25 C.F.R. § 2.7(c) (also noting the administrative unappealability of the decision challenged herein).

In short, the appeals procedures contained in 25 C.F.R. § 2.1 *et seq.* are completely harmonious with the congressional policy of expeditious implementation of gaming compacts reflected in 25 U.S.C. § 2710(d)(8)(C). It is precisely that policy that Plaintiffs would have this Court disrupt.

C.     PLAINTIFF'S ATTEMPT TO ENGRAFT THE REQUIREMENTS OF 25 U.S.C. § 2719*(b)(1)(A)* ONTO 25 U.S.C. § 2719*(a)(2)(A)(i)* IS LEGALLY UNSUPPORTABLE.

At various points in its filings with this Court, Plaintiff attempts to homogenize the requirements of 25 U.S.C. § 2719(b)(1)(A) and 25 U.S.C. § 2719(a)(2)(A)(i), and to impose the former in addition to the latter on tribes seeking the benefit of the "former-reservation-in-Oklahoma" exception to the "post-1988-acquired-lands" limitation. *See, e.g.,* Complaint ¶ 12; Plaintiff's Brief in Support of Application for TRO at 7-8. That attempt must fail, however, because the statutory text makes clear that the 25 U.S.C. § 2719(a)(2)(A)(i) exception for former reservation lands in Oklahoma *operates independently* of the unrelated exceptions established by 25 U.S.C. § 2719(b). Plaintiff's attempt to impose both sets of requirements on "former reservation in Oklahoma" cases is even more inexplicable when it is noted that, *both* times that Plaintiff makes the attempt, it italicizes the word "or" (which itself rebuts Plaintiff's own argument) in quoting the relevant statutory provisions. *See* Complaint ¶ 12 (deploying, in line 7 of ¶ 12, the non-sequitur-generating word "accordingly" after having italicized the dispositive "or" four lines earlier); Plaintiff's Brief in Support of Application for TRO at 7 (same).

II.    THE BALANCE OF EQUITIES RUNS OVERWHELMINGLY AGAINST THE PLAINTIFF IN THE INSTANT CASE.

A.     PLAINTIFF MAY NOT MARGINALIZE THE HARMS TO THE STATE OF OKLAHOMA, THE CHICKASAW NATION, THE CHOCTAW NATION, THE MORE THAN TWENTY GAMING TRIBES IN THE STATE, AND THE CITIZENS OF ALL THE ABOVE, BY THE SIMPLE EXPEDIENT OF NOTING THAT THEY ARE NOT PARTIES TO THIS CASE.

16

In its Brief in Support of Motion for TRO, Plaintiff pointed to two equities in its favor — potential financial loss to its gaming operation and the general public interest in having IGRA properly enforced. *See id.* at 15-16. The Choctaw Nation would observe that the former interest is wholly speculative and likely *de minimis*, while the latter interest erroneously assumes the conclusion that IGRA was not applied correctly by the Secretary (if in principle otherwise unobjectionable). Understandably (from the standpoint of its litigation strategy), Plaintiff said nothing about secondary consequences and/or other collateral damage from the possible *issuance* of an injunction, observing only that "[n]either DOI or the NIGC have a financial stake in the Compact." *Id.* at 15.

Perhaps Plaintiff did not intend to dismiss any competing equities of nonparties to this case by virtue of the sentence quoted immediately above. If it did so intend, however, it should not require extensive citation of authority to establish that where, as here, nonparties' interests are *also* a component of the "public interest," potential harms to those nonparties may also be factored into the "balance-of-equities" equation. *See, e.g., Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).

> B.   ALONG WITH THE HARMS TO THE UNITED STATES' INTERESTS IN GOVERNMENTAL REGULARITY, ADMINISTRATIVE EFFICIENCY, AND TRIBAL SELF-SUFFICIENCY, THE FINANCIAL (AND RELATED) INTERESTS OF THE PERSONS AND ENTITIES DESCRIBED IN PROPOSITION HEADING II-A ABOVE OUTBALANCE PLAINTIFF'S EQUITIES BY A WIDE MARGIN.

While Plaintiffs have said little about the equities favoring a "no injunction" conclusion herein, the Choctaw Nation has said a great deal about them above, *see supra*

at 3-6; *see also* Motion of the Choctaw Nation for Leave to file Brief Amicus Curiae at 2-4, and in the interests of brevity will not rehearse those observations at this point. To all the potentially devastating financial and other consequences to nonparties may be added, however, the federal interests in governmental regularity, administrative efficiency, tribal economic self-sufficiency, and the preservation of the lead *congressional* role in the determination of both general Indian policy and the specific policies for the administration of Indian affairs. To those interests may also be added the *Secretarial* interest in the selection of methods for administering Indian policy when the Congress has not circumscribed those methods by statute. *Cf.* 25 U.S.C. § 2719(a)(2)(A)(i) ("former reservation, *as determined by the Secretary*" (emphasis added)). The Choctaw Nation respectfully suggests that in few cases of which it is aware have the equities been so overwhelming *against* the party seeking relief in the case.

## CONCLUSION

Both because Plaintiff has virtually no chance of prevailing on the merits of this case and because the equities line up so unidirectionally against the Plaintiff, the Choctaw Nation respectfully submits that this Court should deny Plaintiff's request for a preliminary injunction in this case.

18

*Respectfully submitted,*

Dennis W. Arrow[5]
Oklahoma City University School of Law
2501 N. Blackwelder Avenue
Oklahoma City, OK  73106
(405) 521-5179
(405) 521-5089 (Fax)

ATTORNEY FOR AMICUS CURIAE CHOCTAW NATION

---

[5]  Admitted to practice before the United States District Court for the Western District of Oklahoma; California Bar Association #60465.

## *CERTIFICATE OF SERVICE*

This will certify that on the 6th day of April, 2004, a true and correct copy of the above foregoing was mailed, via certified mail, return receipt requested, to:

John Ashcroft, Attorney General
United States of America
Department of Justice
5111 Main Justice Bldg.
10th St. & Constitution Aves. N.W.
Washington, DC  20530-0001

Department of Justice
United States of America
c/o John Ashcroft, Attorney General
5111 Main Justice Bldg.
10th St. & Constitution Aves. N.W.
Washington, DC  20530-0001

Gale Norton, Secretary of Interior
United States Department of the Interior
1849 "C" Street N.W.
Washington, DC  20240

Dave Anderson
Assistant Secretary of the Interior for Indian Affairs
1849 "C" Street N.W.
Washington, DC  20240

United States Department of the Interior — Bureau of Indian Affairs
c/o Brian Pogue
1849 "C" Street N.W.
4140 MIB
Washington, DC  20240

United States Department of the Interior
1849 "C" Street N.W
6159 MIB
Washington, DC  20240

20

Philip Hogan, Chairman
National Indian Gaming Commission
1441 "L" Street N.W., 9th Floor
Washington, DC  20005

National Indian Gaming Commission
c/o Penny Coleman
1441 "L" St. N.W., 9th Floor
Washington, DC  20005

Robert McCampbell
United States Attorney for the Western District of Oklahoma
210 West Park Avenue, Suite 400
Oklahoma City, OK  73102

Linda Epperly
Assistant United States Attorney for the Eastern District of Oklahoma
1200 W. Okmulgee St.
Muskogee, OK  74401

William S. "Bill" Price
Phillips, McFall, McCaffrey, McVay & Murray, P.C.
One Leadership Square, 12th Floor
211 North Robinson
Oklahoma City, OK  73102

Richard J. Grellner
5300 W. Memorial Rd., Suite 14-C
Oklahoma City, OK  73142

Dennis W. Arrow

21